My name is Randall Knox. I'm the attorney for the appellant Jason Sanders. I would first like to apologize to the court for obviously not having read all of the application notes and comments to 2B1.1 and I thank the court and staff for bringing this to my attention and the attention of the government. Because the panel and its clerks obviously were more thorough than either of us were and I think that it's obvious that note 7E1 precludes use of both the charity and abuse of trust enhancements. I would submit to the panel also though because the conduct upon which those enhancements are based by Mr. Sanders is identical. I would also submit that neither the charity nor the abuse of trust enhancement should apply here. I won't repeat everything that's in the briefs but it's obvious Mr. Sanders worked as a philanthropic advisor for the Tides Foundation and Tides was the alleged victim. That is from whom the money was stolen. It was not stolen from the donors. It was stolen from Tides and it went to a for-profit consulting firm that Mr. Sanders secretly owned. And since he was not representing that that consulting firm named On Point was a charity, the charity enhancements under 2B1.1B8A does not apply. He did tell folks that the Tide Foundation was helping doing other charitable work, right? Well the Tides Foundation, that's what they do. It's donor advised requests. People donate to Tides and then under 501c4 they can say I would like my donation to go to this particular group. It can be a charitable group or it can be a for-profit group. But that money that was stolen by Mr. Sanders already belonged to Tides. It did not belong to the donors. If it's clear they can't be double counted, it doesn't matter, does it? Well no, you're right. It doesn't matter in the sense that... He was found guilty of abusing his trust, right? Pardon? The abuse of trust enhancement clearly applies, doesn't it? No, it does not. But I can explain why. Go ahead. The test for the abuse of trust enhancement under 3B1.3 is not whether the individual has substantial discretionary judgment that's given considerable deference. The case that rules in the Ninth Circuit is the Contreras case that I had to bring to the attention of the government several times. And that case makes it clear. Before I get to Contreras, let me just say if you look at 3B1.1, what it talks about is people in highly fiduciary positions, attorneys who are guardians, bank executives in fraudulent schemes, doctors who examine patients. And here, it is abundantly clear in the record that even the chief executive officer of Tides, Drummond Pike, said Jason Sanders was more like a bank teller than a bank executive. He did not have either the special fiduciary duty or, even more important, the substantial discretionary judgment. How did he get access to the funds? Like a bank clerk would, honestly, Your Honor. He's there. The funds are already donated to Tides. He's supposed to help the donors allocate the funds to certain projects. Instead, he put it in his own pocket. Oh, he definitely put it in his own pocket. There's no question about that. He said this month the money went to a consulting firm that he owned. He did not reveal to Tides that he owned it. If he had, it would not be larceny. If he had said, hey, I think you ought to put your money in on point. And by the way, I'm the guy who owns on point. But I think they're doing really good work. That wouldn't have been larceny. Counsel, could I ask you a question on that, please? Yes, Your Honor. I could ask you a question. You know, if he has power to move the money around, why isn't that sufficient for a position of trust? If he's got the ability and responsibility where he can move the money into this other account for on point, why doesn't that qualify as a position of trust? Because a bank teller could do the same thing. A bank teller, and I've represented several of those, a hotel clerk, somebody who has access to the money can steal it and put it someplace else. It is not access to the money that makes the abuse of trust adjustment apply. It is, are you at a high enough level that you are insulated from scrutiny and in a special position? So it's not just you're making it hard to uncover or discover. It's not just that you have access to the funds. It's that you are, under the application notes, like a bank manager doing a fraudulent loan scheme. And the Contreras case 581 Fed 3rd 1163 at page 1166 makes it abundantly clear that there are limitations on the abuse of trust enhancement so it doesn't apply to everybody who just has access to money. It doesn't apply to bank clerks who take money out of the till or people at the check cashing place who take the money and divert it to their own use. You have to be, had Mr. Sanders been managing accounts at a higher level, it may have applied, but under the law of this circuit and under the application notes and that guideline, I don't believe it applies. And I don't need to use the rest of my time unless the court has questions. I would say ask the court also to consider if it is going to reverse the sentence, that it consider directing that this case be reassigned to a different judge because with all due respect to the district court judge here, he manifested an abundance of animus toward my client and toward me when it became apparent that my client had gone to work for the San Francisco Child Abuse Prevention Center and not disclosed to them that he had been fired from time. So Judge Breyer disclosed that and gave you an opportunity to move to recuse and you didn't. That's true, but it is plain error and I think the judge had a sua sponte duty to recuse himself. And going through the record, it became clear to me I was wondering why I did not know about this, about how much his donations were. And I told him, I'd like to know how much you donated to the Child Abuse Prevention Center. The district court clerk sent the disclosure of the amount of the contributions to my old address, even though I had my new address on file two days before the hearing. I'm not going to blame the court for that and perhaps I should have called up and said, hey, where is this? I knew about it at the day of the hearing, which was after the date that Judge Breyer had given me to file the recusal motion. But I would submit... Did you re-erase it at that time? No, I did not, Your Honor. But I would submit, it is clear error. I think the judge had a sua sponte duty under 28 U.S.C. 455. Counsel, does your brief to us request that if there's a re-sentencing, that there must be a new judge? Yes, it does. It does. And that statute 455A requires a judge to disqualify himself or herself whenever that judge's impartiality could reasonably be questioned. And I think if the sentencing transcript is examined by the panel, there will be no question that Judge Breyer was highly offended by the fact that Mr. Sanders had not disclosed to the Child Abuse Prevention Center that he had been fired from and that his lawyer had advised him he had no affirmative duty to disclose that. It was clear that Judge Breyer was looking for an opportunity to punish Mr. Sanders because of that lie. He initially tried to deny Mr. Sanders the adjustment for acceptance of responsibility until I briefed the issue and said, you can't do that. And he said, well, I know I can't do that, but you had the misfortune of drawing me. Those were his words. And he had said initially, if I find out that he lied to the Child Abuse Prevention Center, I am not going to feel constrained by the guidelines. I've been doing this for a while, Your Honors. And I haven't seen a judge verbalize that kind of hostility to a defendant in circumstances like this. Thank you. Good morning. May it please the Court, my name is Susan Gray and I represent the United States. Can you speak up a little bit more? Yeah, the microphones are fine. Just speak up a little bit more. Were you able to hear my initial remarks, Your Honor? Yes. For the record, it's Susan Gray on behalf of the United States. Thank you. Thank you. The District Court in this case appropriately implied both enhancements as they address different conduct and different harms. And as this Court held in United States v. Thornton, the imposition of both of these very enhancements do not constitute double counting. In response to the Court's inquiry last week, I went back through the record with a fine-tooth comb, and I think there are some documents I would like to address and point out to the Court that address not only the enhancements, but specifically address the misrepresentation on behalf of a charity, enhancement, and the abuse of trust. And it's looking at those documents and the defendant's course of conduct as he used those documents that I think illustrate the separateness of the conduct supporting each of the enhancements. And in addition, we do not feel that the district judge had any reason to recuse himself in this case, and in particular asked repeatedly of him to recuse himself. Defense counsel said no. Directing your attention initially to the United States v. Thornton case, in that case the Court considered the application of both of these enhancements. And the Court noticed that each of these enhancements addresses a separate concern. In the course of dealing with the misrepresentation to the charity, the harm is to the public, or in this case, public as in donors. And in this case, the donor was the victim along with the Tides of this particular conduct. And how do we know that? We know that because of the emails at supplemental excerpt of Record 168 through 174, which specifically show that these misrepresentations that Mr. Sanders was acting on behalf of the Tides Foundation and wholly for the benefit of the Tides Foundation were sent to the donor. At one point, you may recall during these numerous five evidentiary hearings we had in this case, Judge Breyer wondered what kinds of representations had been made to the donor. And if I may, Your Honor, the representations made to the donor, who you will recall as this is a donor-advised funds, continued to have a significant say in where her money was going to be spent. And that was true for charitable grants as well as for profit consulting contracts. If you look at 164, I'm sorry, 169, you'll notice that the misrepresentations there were that this particular request was the way that on point was held out to the donor was that it would support non-profit staff. It was within the philanthropic goals. In fact, I counted the word philanthropic is four times in that particular email. And I guess the significant question to ask in the use of this enhancement is if he was not if the donor was not the victim of this misrepresentation, why this charade? Why this charade by Mr. Sanders that he was acting on behalf of the Ties Foundation and that this was a charitable that this was somehow going to further the charitable goals of not only the Ties Foundation, but the donor. That first email that he forwards on is from Wallace Engelman. And I want to remind the Court that Mr. Sanders, when he confessed, stated on point is me and I am on point. So even though the name on page 170 is drafted up with all of this philanthropic overlay for on point was drafted or at least created by Mr. Sanders. Mr. Knox argues that Sanders was more like a bank teller and not a manager. Your Honor, I found another document in the record that I think very clearly rebuts that particular argument. And that is a contract signed by Mr. Sanders at supplemental excerpt of a record 183 on behalf of as philanthropic advisor on behalf of the Ties Foundation. What teller, what administrative assistant signs contracts? That's a supplemental excerpt of 183. In addition, although Mr. Pike, the CEO of Ties gave sometimes conflicting testimony, you will note he described Mr. Pike or Mr. Sanders as managing the client relationship. That's a supplemental excerpt of 276. And equally troubling, he describes in terms of the charitable, I'm just, excuse me for a second, Your Honor, the charitable actions that he was representing himself on behalf of a charity, he indicates that he believes that these donations would somehow be beneficial to other grantees of the Ties Foundation, that somehow the funds being used for the consulting contract would benefit other charitable donees as well. In addition, Your Honor, the documents in the record at 176 contain Mr. Sanders' job description. And if you look at that, it's true. When he was initially hired in 1993, he may have been merely a bank teller or an administrative type assistant. But in 1994, he begins to manage the proposal intake. And in 1998, he becomes an officer or philanthropic advisor. And he manages the delivery of services to individual donors. He manages the client intake. He provides philanthropic advice. He actively participates in client development and planning activities, supervises an assistant, and develops strong working partnerships with clients and grantees to achieve the goals of the Foundation. I submit to the Court that those three documents establish that this was not a teller or a bank administrator. And the Court appropriately found that in its findings at the time of sentencing. As the Court noted, I don't give my money to a bank teller to invest, and I don't rely on their advice. What's our standard of review? Your Honor, your standard of review The Court reviews the District Court's interpretation of the sentencing guidelines de novo. But the application of the guidelines for abuse of discretion and the Court's factual findings for clear error. And I would submit under any standard, the Court appropriately found that there was separate conduct. And if I might, your Honor, to go back to the misrepresentations on behalf of the charity. Mr. Knox claims that there were no misrepresentations made about the on-point contract to the Tides Foundation. But this Court in the United States v. Treadwell found that it's the representations to the donors or the contributors who are fed this pitch that it also has to be taken into account. In the Treadwell case, if the Court will recall, Mr. Treadwell and some of his co-conspirators had created an investment fund. And they went to investors and said, if you invest with our fund, we will also invest in causes or projects that will have a humanitarian benefit. And therefore, this Court held that even though the investor scheme was a for-profit scheme, the fact that Treadwell and his co-conspirators had, if you will, wrapped a cloak of humanitarianism or philanthropic or charitable goals over that endeavor, that was enough to trigger the abuse of the misrepresentation on behalf of a charity. And I would submit that's exactly what happened here. That's why Mr. Saunders made his pitch to the donor victim as if this on-point consulting scheme that he created was somehow going to further not only the goals of the Ties Foundation, but the goals of this particular donor. She believed, because she was dealing with him as a representative of the Ties Foundation, that when she approved the expenditure of this money for this dressed up as it was in these emails as an entity to further the non-profit philanthropic goals of her and the Ties Foundation, that it was an appropriate expenditure. Now, why was she harmed? One, of course, as this enhancement is directed to the harm to the public and donors in particular who lose their faith in philanthropic goals, she was harmed because she no longer has the ability to advise and consent to how those funds are dispersed to charities or even for for-profit consulting contracts. But that was an important part of the process. If she wasn't, why the sham, why the charade by Mr. Saunders to make her believe that on-point was, in fact, engaged in philanthropic activities, albeit for-profit, but certainly had philanthropic goals, why hide his own involvement under another identity of Mr. Saunders, Mr. Engelman? And I would submit to the Court that is because he wanted her to believe. He wanted her to draw the inference, just as in Treadwell, that the money she was authorizing for expenditure on on-point somehow was going to be used in furtherance of not only her own charitable goals, but those of Tides. And interestingly enough, the CEO of Tides tells us what he thinks Mr. Saunders did. He says, I think he represented to the donor that this consulting work would benefit certain organizations that were also grantees of Tides. So under the Treadwell case, Your Honor, it's not merely that you misrepresent, that let me back up, that if you are part of a for-profit organization, if you draw that cloak of charitable giving or humanitarian giving over you as an incentive to donors to authorize expenditures or payments, that is significant enough to bring you within this particular enhancement. Thank you, Counselor. Pardon me? Your time. Sorry. Thank you, Your Honor. We'll submit it and we would ask that the Court affirm the District Court. I think you have 10 seconds. Oh, 10 seconds? I didn't realize it. Thank you. But no more. I understand. Well, she went two minutes over, but okay. Thornton, people were saying that they're raising money for a kidney research at USC. That's clearly a charity. Second, the donors are not victims and not on the indictment. Thank you. Thank you. Case just argued will be submitted. The next case for oral argument is Smith v. United Parcel Service.
judges: Reinhardt, Hawkins, Gould